UNITED STATES v. HENSEL, BRUCKMANN & LORBACHER, INC.

No. 5329.—Invoice dated Singen-Hohentwiel, Germany, August 17, 1938.
Certified August 20, 1938.
Entered at New York September 6, 1938.
Entry No. 725093.

Third Division, Appellate Term

(Decided June 23, 1941)

*Charles D. Lawrence*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.
*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for the appellee.

Before CLINE and KEEFE, Judges

KEEFE, Judge: This appeal for a review filed by the Government of a reappraisement rendered by the trial court upon an importation of aluminum metal covered paper imported from Germany involves the question of applicability of the foreign value rather than the export value of the merchandise for duty purposes and, further, whether or not the United States agent of the exporter constituted an exclusive agent, in which event the export value of such merchandise would not be applicable thereto.

The evidence produced as to the similarity of the imported merchandise with aluminum metal covered paper sold in the home market consisted of an affidavit of the plant manager of the manu-

facturer and exporter. Evidence of a controlled market in Germany consisted of an affidavit of the director of the Aluminum Foil Association and of the Convention for Aluminum Covered Paper, which organizations were composed of all of the manufacturers of aluminum foil and aluminum metal covered paper in Germany. Also two affidavits executed by the sales manager of the exporter. In addition the vice president of Adolphe Hurst & Co., Inc., the selling agency of the manufacturer, and the president of Karl Pauli Corporation, the ultimate consignee herein, testified as to the nature of their transactions with the exporter of the merchandise herein, and as to whether or not the United States agent represented the exclusive agent of the foreign exporter.

From the evidence adduced the trial court was unable to find that the paper sold in the home market was dissimilar to the paper in question herein principally on account of the absence of evidence of the similarity of use of the two products. However, the trial court considered that the uncontradicted evidence offered by the plaintiff fully established that aluminum metal covered paper, such as or similar to the merchandise in question, was not freely offered for sale for home consumption in Germany at the time of exportation of the merchandise herein because the control exercised by the Convention of Aluminum Covered Paper embraced all of the manufacturers of such paper in Germany and therefore control was established at its source which control was carried to the distribution and use of such paper and the exaction of penalties for violation rendered such control over production, sale, distribution, and use of said paper absolute and complete.

From the evidence respecting the question of the use of the export value as a basis of value, the court found that the contract of agency of the foreign manufacturer and exporter with their American agent is of such character that he was not an exclusive agent to such an extent that a finding of export value could not be made. The court therefore held that the entered value represented the value to be taken as the basis for the assessment of duties.

Upon appeal the Government contends that the trial court erred in finding that the importer had established a *prima facie* case and that the judgment rendered was not supported by any substantial evidence; that the trial court erred in admitting exhibits 21 to 27, inclusive, in evidence upon the grounds that they were conclusions only and failed to present evidence sufficient to establish a controlled market in Germany and that had the exhibits been excluded there would be no evidence sustaining the claim of the importer that there was a controlled market; that no proof was offered to establish the usual wholesale quantities; and that the exporter's market was limited to sales

consummated in the United States through Adolphe Hurst & Co., the sales representatives, and importers were compelled to obtain their merchandise through the selling agency, and therefore the court erred in finding a free export market in the United States.

From a careful consideration of the evidence submitted before the court below including all of the exhibits admitted therein, we are of the opinion that the evidence was insufficient to prove that the aluminum metal covered paper sold in the home market was not similar to the merchandise sold for export; that the uncontradicted evidence fully supports the contention of the importer that sales in the home market of such paper were controlled and restricted from their source right down to the use applied thereto by the consumer and that such control prevailed whether or not the merchandise was sold to dealers and consumers who were members of the association, or to firms which were not members although upon the approved list of firms of the Association for Aluminum Metal Covered Paper; that inasmuch as "A resale of the foils by the customer is forbidden," it is immaterial whether or not sales were made to dealers not members of the association, whether on the approved list or not; that exhibits 21 to 27 inclusive, admitted in evidence by the trial court over objection of Government counsel, present substantial evidence of a controlled foreign market covering the wholesale trade in aluminum metal covered paper and in our opinion were properly admitted.

Inasmuch as there is ample proof of a controlled market in Germany the finding of foreign value by the appraiser is clearly erroneous and should be reversed upon proof that the export prices of such paper should prevail. To that end, the importer has clearly established that such merchandise is sold in wholesale lots of from 5 to 50 reams and that invoices in evidence covering all importations of similar merchandise by the importer herein regardless of quantity are at a uniform price, not varying according to the quantities sold. The evidence further established that the agency of the foreign shipper was not exclusive; that the agent may buy merchandise upon his own account and in so doing assumes the entire risk and is allowed a 5 per centum discount deductible from the invoices; that in such instances responsibility for a good delivery of the goods lies entirely with the foreign principal. The agent may also act on a commission basis. In such cases the German manufacturer and exporter determines whether the order shall be accepted, allowing the agent a 5 per centum commission, payable quarterly on the basis of the paid-up transactions, on the sales price obtained for merchandise sold by the agent. Prices for such paper are fixed by the foreign manufacturer who submits the lowest prices and best terms. Invoices covering such transactions are made payable to the agent who makes monthly accountings and

remittances to the foreign principal. In the contract with the agent it is expressly provided that the foreign manufacturer may do business directly with any importer in this country subject to the commission arrangement with the agent.

We are fully in agreement with the trial court that the importer has established that the foreign manufacturer under the agreement with the agent freely offered for sale and sold aluminum metal covered paper directly to importers in the United States and that the contract with the United States agent does not confer upon him an exclusive agency such as would bar all offers for sale and all sales of merchandise similar to the paper in question in the principal markets of the country from which exported.

For the foregoing reasons we find that the court below properly found that the entered value of the merchandise herein represents the export value thereof. The decision of the lower court is therefore affirmed and judgment will be rendered accordingly.