## UNITED STATES v. NICHOLAS GAL ET AL.

**No. 6192.**—Invoices dated Teningen, Germany, July 25, 1936, etc.
Entered at New York, N. Y., August 13, 1936, etc.
Entry No. 719250/2, etc.

## Third Division, Appellate Term

(Decided July 6, 1945)

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.

*Eugene R. Pickrell* (*Eugene R. Pickrell* and *Eugene A. Chase* of counsel) for the appellees.

Before CLINE, KEEFE, and EKWALL, Judges; KEEFE, J., not participating

CLINE, Judge: This is an application for review of the decision of the trial judge in *Nicholas Gal et al.* v. *United States*, Reap. Dec. 5995, as modified by Reap. Dec. 6005, and relates to the value of aluminum metal covered paper, exported from Germany in 1935 and 1936 by Aluminiumwerk Tscheulin, G. m. b. H., Teningen, Germany.

These three appeals cover five different varieties of paper. Four varieties were appraised on the basis of foreign value, while the fifth type, described in Reappraisement 138496–A, was appraised on the basis of cost of production.

The trial judge held, in substance, that the invoice values less certain charges, were the dutiable export values, as provided for in section 402 (d) of the Tariff Act of 1930.

The appellant does not contend before this division that the four varieties of the merchandise should be appraised on the basis of foreign value as returned by the appraiser, the only contention being that the plaintiffs below failed to prove all the elements necessary to establish export value and that in the absence of sufficient proof, the judgment below should be reversed. As to the fifth variety, the appellant claims that cost of production is the proper basis for determining the value of the merchandise.

Plaintiffs' claim that there is no foreign value is based on two

contentions; one, that the aluminum metal covered paper involved here is not such as or similar to the aluminum metal covered paper sold or offered for sale for home consumption in the foreign market; and second, that the foreign market is a controlled or restricted market.

On the question of similarity of the merchandise, it is stated in an affidavit of Emil Tscheulin, manager of Aluminiumwerk Tscheulin, G. m. b. H., dated October 20, 1939, that the backed aluminum foils, manufactured and sold for consumption in Germany, were produced from new crude aluminum of a standard purity of 99.3 to 99.5 per centum; that the backed aluminum foils, manufactured for export to the United States, were produced from a mixture of waste aluminum and new crude aluminum of a standard purity of 99.3 to 99.5 per centum; and that the foils, produced for consumption in Germany, were softer, not as brittle, and of less tensile strength than those produced for export to the United States. Nicholas Gal, American agent of Aluminumwerk Tscheulin, testified that the paper was specially made up for American purchasers because the packing machines used here were speedier than the machines used in Europe. Treasury Attaché May's report states that he found no indications in the storeroom of the plant in Germany that papers for the United States were kept separately from those for Germany.

The trial court found that the aluminum metal covered paper involved was not dissimilar to that sold or offered for sale for home consumption in Germany, on the ground of failure to show similarity of use or adaptability to use of both kinds of paper, following *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 6 Cust. Ct. 746, Reap. Dec. 5097, affirmed by the third division in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 7 Cust. Ct. 355, Reap. Dec. 5329. We are in agreement with this finding.

The evidence as to a restricted foreign market is found in an affidavit of Dr. Rudolf Görnandt, managing director of the Aluminum Foil Association and the Convention for Aluminum Covered Paper. That affidavit was also offered and admitted in evidence in the *Hensel* case, *supra*. It states in substance that the two associations were cartels comprising all the manufacturers of aluminum foil and aluminum metal covered paper in Germany; that the cartels fixed the prices at which those products could be sold for home consumption in Germany; that the cartels had lists of firms to which members of the cartels could sell for home consumption; that they were prohibited from selling to others; that the lists did not include all possible purchasers; that purchasers could not resell except that wholesalers could sell to consumers at prices fixed by the cartels provided that the latter agreed to use the merchandise in their plants and not resell it; and that a penalty was imposed upon members of the cartels who

violated the restrictions. The affidavit of Emil Tscheulin, above mentioned, corroborates these statements.

The trial judge held that the merchandise was not freely offered for sale for home consumption and that there was therefore no foreign value. Since the evidence discloses a controlled rather than a free market, sales of the merchandise for home consumption do not establish foreign value. *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. 1, C. A. D. 115; *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States, supra; F. C. Gerlach & Co. et al.* v. *United States,* 6 Cust. Ct. 710, Reap. Dec. 5084, affirmed in *United States* v. *F. C. Gerlach & Co. et al.*, 7 Cust. Ct. 494, Reap. Dec. 5443.

Although the evidence discloses that the appraised value based upon foreign value is erroneous, it is also incumbent upon plaintiff to establish another correct dutiable value. *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276; *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332. The Government contends that plaintiffs have failed to prove that export value was the correct dutiable value. It is claimed first that the sales were not made in Germany, but in the United States and that there was thus no export market to the United States on which to base an export value. *United States* v. *Massce & Co. et al.*, 21 C. C. P. A. 54, T. D. 46379.

The sales by Aluminiumwerk Tscheulin to the United States were conducted in the following manner. By agreement dated June 10, 1930, Nicholas Gal was retained as exclusive selling agent in the United States. He was to receive a commission of 6 per centum and the sum of $100 per month for general overhead expenses for which he was to organize the market in a systematic manner, see that the correct prices were charged on the basis of information received from the company, and forward information as to the development of demand and the solvency of customers. Although the agreement was by its terms to last for 5 years, it was continued by oral arrangement until June 1936 when another written contract with identical terms was negotiated.

Nicholas Gal testified that he offered the merchandise to all purchasers in the United States on the basis of prices and samples; that when he was successful in closing a deal, he cabled Germany asking whether they would accept the contract; that all orders were subject to confirmation by Tscheulin; that he sent invoices to customers on his own letterhead to which were attached original specification and weight sheets which he received from Germany and which contained the name of the customer and the rubber stamp of the German firm; that Tscheulin was financially responsible for the non-

payment of any importations; and that payment was made to him (Gal) and he deducted his commission, the duty, and other expenses, and remitted the balance to Tscheulin. He stated that during the period here involved the export manager and the president of Tscheulin each came to the United States, called on purchasers with Mr. Gal and made sales, and that commissions were subsequently paid to Gal on those sales.

The method of sale above described is confirmed by reports of Treasury Department representatives. The numerous invoices attached to exhibit 7 indicate that the prices were in dollars and were f. o. b. New York or some other port in this country, duty included. The report of Treasury Representative Griebel states:

> Prices are usually c. i. f. New York, duty included. They may be ex-works or f. o. b. seaport if the customer so wishes.

Another affidavit of Emil Tscheulin, also dated October 20, 1939, states that the principal market for the sale of aluminum metal covered paper for exportation to the United States was Teningen, Germany.

The facts above outlined place this case within the exception indicated in *United States* v. *Massce & Co. et al.*, *supra*, page 59:

> So here, if offers by purchasers had been transmitted to Switzerland and there accepted by the Swiss manufacturer, we should not hesitate, under the facts in this case, to hold that export value was established and that it was immaterial where or when the title passed from the foreign seller to the purchaser.

In the *Massce* case the branch house of the manufacturer in New York sent to Switzerland orders for designs, but the orders were finally accepted or rejected by the New York branch house. The manufacturer in Switzerland had no communication or relations with purchasers in the United States and there was nothing in the record or entry papers identifying any United States purchaser. In the instant case, on the other hand, all orders were finally accepted or rejected in Germany; Nicholas Gal was the selling agent of the firm; the invoices contained the name of the German firm and that of the customer; and both seller and purchaser knew that they were dealing with each other through Nicholas Gal as agent.

The facts in the instant case approximate those in *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486. There laces were ordered directly from the manufacturer in Switzerland or through the agent in New York; payment was made in United States currency; the price included cost, insurance, freight, and duty f. o. b. New York; laces were consigned to the agent in New York and billed by the consignee in his own name to the purchasers; and payment was made to the agent. It was held that export value was the proper dutiable value since the laces were freely offered for sale in Switzerland and the place where title passed was immaterial. See also *F. C.*

*Gerlach & Co. et al.* v. *United States, supra,* and *New England Foil Corp.* v. *United States,* 8 Cust. Ct. 630, Reap. Dec. 5591.

We conclude, therefore, that the manner in which the sales were made is no bar to the finding of export value.

We are in agreement with the trial judge that plaintiffs have established the necessary elements to meet the statutory meaning of export value as it is set forth in section 402 (d) of the Tariff Act of 1930. The record shows that the manufacturer produced a great many varieties of aluminum metal covered paper; and that the price of each variety was different depending upon a number of factors, such as thickness of the foil, finish of the foil, quality of the paper, thickness of the paper, embossing, and color. Although there are differences in price for somewhat similar merchandise, Nicholas Gal explained that in such cases the merchandise was not exactly the same. He stated positively, however, that all types were freely offered at the same prices to all customers. We quote the following from his testimony:

R. Q. Mr. Gal, did any of your purchasers, or your customers in this country have exclusive purchasing right for any variety of aluminum metal covered paper?—A. Never, never, absolutely!

R. Q. In other words, you freely offered the merchandise to all purchasers?—A. That is very correct.

R. Q. Now, inasmuch as there are four or five different factors entering into aluminum metal covered paper there could be a great number of varieties, is that true?—A. That is correct.

R. Q. Is it true that these are the factors, the thickness of the aluminum foil, the character of the paper, the weight of the paper and the size of the sheets, or the width of the reels, is that right?—A. Right.

R. Q. And the prices will vary depending upon those characteristics?—A. That is right.

R. Q. But all the merchandise you sold you freely offered to sell to anybody?—A. Yes.

R. Q. That is true with the merchandise you sold American Chicle?—A. That is absolutely right.

R. Q. Did the American Chicle have exclusive right to purchase that merchandise?—A. Heavens no, absolutely!

R. Q. You sold it to anybody?—A. Absolutely!

R. Q. You freely offered it to anybody?—A. Absolutely!

The Government contends that if the court should hold that there is export value, it should not allow any deduction from the invoice price, citing *United States* v. *Zellerbach Paper Co.,* 28 C. C. P. A. 303, C. A. D. 159. That case involved foreign value and is not applicable here. The same contention was made in *United States* v. *New England Foil Corp.,* 10 Cust. Ct. 596, Reap. Dec. 5856, and the court, sitting in appellate term, said (pp. 597–598):

\*      \*      \*      \*      \*      \*      \*

The sales here in question were consummated in Switzerland and not in the United States, the manufacturer retaining the authority to sell direct and the freely offered price to all purchasers for export to the United States is $6.50 per

ream, less the cash discount, including the duty and nondutiable charges indicated. Such value, with such deductions, is clearly the export value as defined by the statute. See *Gerlach* v. *United States*, Reap. Dec. 5084 affirmed in Reap. Dec. 5443. Under the novel theory advanced by the Government, c. i. f. duty-paid prices are excluded from any definitions of value as outlined by Congress in the administrative provisions of the law. It may hardly be implied that Congress in drafting the tariff laws was so ignorant of the ordinary commercial transactions that c. i. f. duty-paid transactions are so outside its knowledge that such prices were not contemplated when drafting the definitions of value.

From a consideration of the record before us, we find:

1. That there was no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, for the instant merchandise at the time of exportation thereof.

2. That the proper basis for appraisement for said merchandise is export value, as such value is defined in section 402 (d) of the said act.

3. That such dutiable export values of the varieties of aluminum metal covered paper in question are the invoice values, less insurance, freight to German shipping port, consular charges, and sea freight, as invoiced, and less duties.

The judgment below is therefore affirmed, and judgment will be rendered accordingly.