WM. A. FOSTER & CO., INC., FOR ACCT. OF BRADLEY & BAKER ET AL. v. UNITED STATES

No. 7673.—Invoices dated Grevenbroich, Germany, October 8, 1934, etc.
Entered at New York, N. Y., October 23, 1934, etc.
Entry No. 740264, etc.

(Decided February 24, 1949)

*Eugene R. Pickrell* for the plaintiffs.
*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, special attorneys), for the defendant.

LAWRENCE, Judge: The twelve appeals listed in schedule "A", hereto attached and made a part hereof, involve the question of the proper dutiable value of certain metal-covered paper. The paper was exported from Germany between October 4, 1934, and June 19, 1936, and entered at the port of New York on various dates between October 15, 1934, and July 1, 1936. The merchandise was entered at various prices, less nondutiable charges, such as freight, insurance, duty, etc.,

and although it is stated on the papers attached to the invoices that these deductions were taken to make United States value, it is now contended that they were really deductions to make export value. The merchandise was appraised on the basis of foreign value at a considerable advance in each case.

Plaintiffs contend that there was no foreign value for this merchandise because there was a controlled market for such or similar merchandise in Germany during the period in question, and that the entered values are the proper dutiable export values. Defendant contends that there was no controlled foreign market and that therefore the appraised values represent the proper dutiable foreign market values for such or similar merchandise.

At the trial, when the plaintiffs rested, defendant moved to dismiss these appeals on the ground that plaintiffs had failed to establish a *prima facie* case. The motion which was taken under advisement is denied and an exception allowed. Moreover, it should be noted that the merchandise was appraised subsequent to the effective date of the Customs Administrative Act of 1938. Following the construction placed upon said act, as announced by our appellate court in *United States* v. *Fischer*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, it is my duty in any event to find a value for the merchandise herein.

The record consists of the testimony of two witnesses; a copy of a contract between the exporter and Bradley & Baker, one of the importers; three affidavits, offered by the plaintiffs; and one special agent's report, offered by the defendant. In many respects, the special agent's report supports and confirms the evidence offered by the plaintiffs.

First, I shall consider the question of whether or not the market in Germany for such or similar merchandise to that here involved was a controlled market. On this phase of the case, I have the affidavit (exhibit 2) of the managing director of the aluminum foil association and the convention for aluminum-covered paper, cartels comprising as its members all the manufacturers of metal-covered paper in Germany. In this affidavit the affiant avers that, during the period here in question, these cartels fixed the prices at which metal-covered paper was sold in Germany by its members; that a penalty of 1 RM. per kilogram was levied if metal-covered paper were sold for consumption in Germany at prices lower than those fixed by this cartel; that these cartels had lists of individuals, partnerships, corporations, and other concerns to whom the members could sell metal-covered paper for home consumption in Germany; that members of these cartels were prohibited from selling metal-covered paper to any individual, partnership, corporation, or other concern who was not on the approved list; and that this list did not include all the possible purchasers of metal-covered paper.

Affiant further states that these cartels required their members to stipulate in their offers to sell and in their sales of metal-covered paper to consumers in Germany that they must utilize the metal-covered paper and must not resell it; that those who violated this restriction were assessed a penalty or fine of 1 RM. per kilogram of the merchandise so sold without restriction for each violation; and that during the period of these importations this penalty was invoked in several instances. Further, it is stated that these cartels penalize any and all purchasers of metal-covered paper for violation of the restrictions hereinbefore set out by refusing such violators further deliveries of metal-covered paper.

The affiant further states:

That the purposes of the cartels comprising all of the manufacturers of Aluminium Foil and Aluminium Metal Covered Paper in Germany during the period from January 1, 1934, to the date of the signing of this affidavit [October 18, 1939], are to control and direct the entire disposition of Aluminium Foil an [sic] Aluminium Metal Covered Paper manufactured in Germany from the time of manufacture to the time of consumption in Germany; that the cartels control the prices and conditions under which Aluminium Foil and Aluminium Metal Covered Paper are offered for sale and sold for home consumption in Germany and imposes restrictions on the purchasers in exercising this control; that the cartels fix the penalties for all violators of prices and restrictions, and that the restrictions and penalties are made known to the purchasers at the time the Aluminium Foil and Aluminium Metal Covered Paper are offered for sale.

In collective exhibit 3 the affiant states that the exporter herein was a member of the aforesaid cartel and outlines the procedure followed by the exporter in complying with the requirements and restrictions imposed by the cartel.

Collective exhibit 4 is an affidavit by a director of the exporting corporation. The period of time covered by this affidavit runs from January 1, 1935, to June 17, 1940. Affiant details a number of different kinds and qualities of metal-covered paper and lists the prices at which the same were offered for sale and sold, attaching copies of invoices as supporting evidence.

The evidence in this case as to the absence of a foreign market value for the merchandise here involved is essentially the same as that in the cases of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 7 Cust. Ct. 355, Reap. Dec. 5329; *United States* v. *Nicholas Gal et al.*, 15 Cust. Ct. 395, Reap. Dec. 6192; and *United States* v. *Wm. A. Foster & Co., Inc.*, 34 C. C. P. A. (Customs) 9, C. A. D. 336. Following the principles announced in the above authorities, I find and hold that that there was no foreign market value for the involved merchandise by reason of the controls and restrictions imposed by the German cartels.

Turning now to the question of whether or not plaintiffs have established an export value for the instant merchandise, counsel for the

defendant contends that the proof is lacking as to the usual wholesale quantity in which the merchandise was freely offered for sale. The answer to this contention is to be found in the record where two well-qualified witnesses testified that the price did not vary with the quantity purchased. Under this state of facts, it is not necessary for me to find what constitutes a usual wholesale quantity. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093.

Plaintiffs' witnesses testified, without contradiction, as to the principal markets for the sale of this merchandise. As to the actual price at which this merchandise was freely offered for sale and sold to all purchasers, it is true, as pointed out by defendant in its brief, that there are slight variations in prices shown on the different invoices before us, but as stated by one of plaintiffs' witnesses: "* * * there's nothing startling about that." Few prices remain constant over a long period of time. An examination of the invoiced prices of the involved merchandise will show an occasional slight variation in the price of the same merchandise over the 1½ years' period of time here involved. However, the record as a whole definitely warrants a finding that the entered values represent the prices at which the merchandise was freely offered for sale to all purchasers in the principal market, in usual wholesale quantities, and in the ordinary course of trade for exportation to the United States.

The special agent's report, exhibit 5, contains the following statement with reference to the prices of the involved merchandise: "Prices are established by negotiations according to the kind and designs of the foil and paper." Furthermore, collective exhibit 4 herein, insofar as prices are concerned, is in practically the same language as was exhibit 6 in *United States* v. *Foster, supra,* concerning which our appellate court observed:

It appears from appellee's Exhibit 6 that at, prior to, and subsequent to, the exportation of the involved merchandise the exporter and other manufacturers in Germany of merchandise like that here involved freely offered such merchandise for sale to all purchasers for export to the United States in the usual wholesale quantities and in the ordinary course of trade at prices which, with the duty paid and other proper elements of deduction, correspond to the prices paid in the nstant case by the Standard Rolling Mills., Inc., and that such offers for sale were not limited to the Standard Rolling Mills, Inc.

We have given careful consideration to all of the arguments presented here by counsel for the Government, but are of opinion, for the reasons hereinbefore stated, that there is substantial evidence of record to sustain the judgment of the appellate division of the Customs Court holding that the entered values are the export and dutiable values of the involved merchandise. The judgment is, accordingly, *affirmed.*

Based upon a careful consideration of the record herein, I find as facts:

1. That the merchandise covered by these appeals consists of metal-covered paper exported from Germany on various dates between October 4, 1934, and June 19, 1936.

2. That this merchandise was appraised on the basis of foreign value, section 402 (c) of the Tariff Act of 1930, and is claimed to be properly dutiable on the basis of export value, section 402 (d) of said act.

3. That the home market in Germany for the sale of such or similar merchandise was a controlled market, and the merchandise was therefore not freely offered for sale to all purchasers, thus precluding a finding of foreign value for the merchandise under section 402 (c) of the Tariff Act of 1930.

4. That Grevenbroich, Niederrhein, Germany, was a principal market for the sale of merchandise such as or similar to that here involved.

5. That the price of the merchandise did not vary according to the quantity purchased.

6. That merchandise such as or similar to that here involved was, on or about the dates of exportation, freely offered for sale and sold in the ordinary course of trade in the principal markets of Germany for exportation to the United States within the meaning of section 402 (d) of the Tariff Act of 1930 at prices equal to but not higher than the entered values herein.

I therefore conclude as matter of law that the merchandise before me should be appraised on the basis of the export value thereof, as provided in section 402 (d) of the Tariff Act of 1930, and that such value is represented by the entered value in each case.

Judgment will be entered accordingly.