(Reap. Dec. 8573)

NICHOLAS GAL (GLOBE SHIPPING CO., INC.) *v.* UNITED STATES

Entry Nos. 720153/1; 708931.

(Decided April 27, 1956)

*Michael Stramiello, Jr.,* for the plaintiff.

*George S. Leonard,* Acting Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

Rao, Judge: These cases are before me by virtue of an order entered May 26, 1952 (28 Cust. Ct. 656, Reap. Dec. 8119, appeal dismissed 30 Cust. Ct. 589, A. R. D. 15, and 33 Cust. Ct. 357, Abstract 58385), restoring them to the calendar for further hearing, specifically to afford plaintiff an opportunity to prove export value of similar merchandise.

The product in issue is aluminum metal-covered paper of various grades, entered and appraised as follows:

| Invoice description | Entered at reichsmarks per ream, 20 by 26″ by 500 sheets | Appraised at reichsmarks per 100 sq. meters |
|---|---|---|
| Reappraisement 139494–A | | |
| (1) Metal-paper 0.009/10 mm, white, plain, bright, backed with 60 gr Cellulose-paper, size: 26 x 48½″ 80 cases, 100000 sheets, 81357.310 qm.=485 reams | 19. 7197 | 16. 25 Less 2% Net, packed. F. V. |
| (2) Metal-paper 0.010 mm, gold, plain, bright, backed with 50 gr Cellulose (B45S50) Reels 26″ wide, 7 cases, 12200 metres=50 reams | 24. 86 | 22. 75 Less 2% Net, packed. F. V. |
| (3) Metal-paper 0.009/10 mm, white, embossed, backed with 60 gr Cellulose-paper 6 Cases, 8636 mtr=5700.-qm= 34 reams emb. 666 "MH" 5 cases, 7620 mtr=5029.-qm= 30 reams emb. 470 "WA" | 28. 687 | 17. 00 Less 2% Net, packed. F. V. |
| (4) Metal-paper 0.010 mm, white and gold, plain, bright, backed with 60 gr Cellulose-paper, a) 4 cases, 6096 metres= 24 reams=4096 qm white | 20. 690 | 15. 75 Less 2% Net, packed. F. V. |
| b) 2 cases, 2286 metres=1536 qm= 9 reams gold | 27. 631 | 22. 75 Less 2% Net, packed. F. V. |
| (5) Metal-paper 0.010 mm, backed with 60 gr Cell-paper, a) 1 case 1490 mtr=757 qm= 4.515 reams design 4588 (blue) | 28. 044 | 22. 75 Less 2% Net, packed. F. V. |
| b) 2 cases, 3460 mtr=1758, qm= 10.485 reams, design 5529 (Schotten-design) (green and blue) | 32. 005 | 29. 75 Less 2% Net, packed. F. V. |
| Reappraisement 139535–A | | |
| (6) Metal-Paper 0.015 mm gold, plain, highly polished, backed with 80 gr Cellulose Paper, 6924 metres=27.260 reams | [1] 39. 192 | 29. 26 Less 2% Net, packed. F. V. |

[1] Per ream of 167.5 square meters.

| Invoice description | Entered at reichs-marks per ream, 20 by 26″ by 500 sheets | Appraised at reichsmarks per 100 sq. meters |
|---|---|---|
| (7) Metal-Paper 0.009/10 mm white, embossed, backed with 60 gr Cellulose Paper, embossed No. 715, TM 1531 6714 metres=26.433 reams embossed No. 736, TO 1531, 7112 metres=28 reams | 17. 037 | 17 Less 2% Net, packed. F. V. |
| (8) Metal-paper 0.010 mm white, plain, bright, half dull quality, backed with 70 gr Cellulose Paper, 4064 metres=16 reams | [1] 21. 613 | 20. 35 Less 2% Net, packed. F. V. |

During the original hearing, counsel for defendant conceded that, although appraisement was predicated upon the basis of foreign value, there were no foreign values for such or similar merchandise. It was further established that, by virtue of an exclusive purchasing agreement between the importer and the German manufacturer and exporter of this merchandise, to wit, Aluminiumwerk Tscheulin G. m. b. H. (hereinfater called Tscheulin), there were no export values for such merchandise.

In attempting to sustain the contention that the proper basis of value for the merchandise at bar was United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, plaintiff introduced evidence purporting to show that there was no export value for similar merchandise. Particularly, it was urged that aluminum metal-covered paper offered for sale for export by other German manufacturers, of whom there were three, differed in essential and material respects from the aluminum metal-covered paper manufactured and sold by Tscheulin.

The testimony of plaintiff Nicholas Gal, whereby he sought to contrast the aluminum metal-covered paper imported by him with that sold by Breisgau-Walzwerk, G. m. b. H., and Aluminum-Walzwerke Singen G. m. b. H., two German manufacturers of aluminum metal-covered paper, was reviewed and analyzed in detail in my prior opinion (28 Cust. 656, Reap. Dec. 8119, appeal dismissed, 30 Cust. Ct. 589, A.R.D. 15), and held insufficient to establish dissimilarity between the two types. In this connection, I stated the following:

Despite the protestations of the plaintiff to the effect that there were substantial differences in quality and price between the aluminum metal covered paper which he offered for sale, and that sold by other German manufacturers, and that the

[1] Per ream of 167.5 square meters.

two types of paper were not commercially interchangeable, I am of opinion that it is fairly inferable from the record taken as a whole that a prospective purchaser, finding the Tscheulin products unavailable, would accept those of other German manufacturers as satisfactory substitutes, since they were adaptable to the same ultimate uses and would accomplish substantially the same results. It would appear that a manufacturer of aluminum metal covered paper boxes or of aluminum seals could produce those articles whether he used the Tscheulin aluminum metal covered paper or some other. It might, perhaps, be a less efficient process if the Tscheulin paper were unavailable, but it does not appear from this record that the use of other aluminum metal covered paper would produce an inferior box or seal.

Differences in the grade of aluminum used, in the production of aluminum metal covered paper, in the weight and thickness of the final product, in its softness, brittleness, tensile strength, cost of production, and its adaptability for machines of various speeds were held, in the cases of *Hensel, Bruckmann & Lorbacher, Inc.,* v. *United States,* 6 Cust. Ct. 746, Reap. Dec. 5097, affirmed in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* 7 Cust. Ct. 355, Reap. Dec. 5329, and *United States* v. *Nicholas Gal et al.,* 15 Cust. Ct. 395, Reap. Dec. 6192, insufficient to establish dissimilarity of aluminum metal covered paper offered for sale for foreign consumption and that available for exportation to the United States, in the absence of proof as to "similarity of use or adaptability to use of both kinds of paper." The omission of proof of use in the cited cases, which has been here supplied, is of doubtful benefit to the plaintiff herein, as it has been established that the same general class of users, namely, paper box manufacturers and seal manufacturers, purchases competitive aluminum metal covered papers as purchase the imported products.

Accordingly, I am of opinion that merchandise similar to that involved in reappraisements 139494–A and 139535–A was offered in Germany for exportation to the United States. As to whether it was freely offered for sale in compliance with the provisions of section 402 (d), *supra,* and the prices of such offerings, the record is silent. Under the provisions of 28 U. S. C. § 2631, I am required to find values for the imported merchandise. As the appraised values have been admitted to be erroneous, and there is insufficient evidence of record from which a finding of export values can be made, the issue of similarity having been resolved against the plaintiff, I hereby direct that the said two appeals be severed from reappraisement 140802–A and restored to the calendar for further proof in accordance with the views hereinbefore expressed.

This is tantamount to a holding that, generally speaking, the products manufactured by Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H. were similar to those manufactured by Tscheulin, and counsel for plaintiff, so construing my conclusions, although persisting in the position that dissimilarity was established, offered in evidence at the present trial the record in the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States, supra.* That case involved importations of aluminum metal-covered paper, manufactured by Breisgau-Walzwerk G. m. b H. and Aluminium-Walzwerke Singen G. m. b. H., and the question of whether export value, as defined in section 402 (d) of the Tariff Act of 1930, was the proper basis

of appraisement of such merchandise. The record was admitted over objection of Government counsel.

In holding that the correct values of the paper there involved were the export values, as represented by the entered values, the court stated:

Thus the question is presented whether plaintiff has established by the proof adduced herein all of the elements necessary to meet the statutory meaning of said export value. The evidence along that line consists of three affidavits which were admitted in evidence as exhibits 24, 25, and 26, and all of which were executed by the assistant export manager of the manufacturer and shipper of the instant merchandise. Referring to the period with which we are concerned for the purposes of this case, said witness testified that he had charge of all of the aluminum metal covered paper manufactured by the said Breisgau-Walzwerk G. m. b. H. and sold for export to the United States, including the sale of the merchandise covered by the importation in question; that the relationship in all such transactions between the purchasers in this country and the foreign manufacturer was that of buyer and seller; and that the business of exporting such paper as conducted by said company is representative of that carried on by other concerns in Germany. Said witness further testified that merchandise, such as or similar to the paper in question, was at the time of exportation of the instant merchandise freely offered for sale in the ordinary course of trade to all purchasers in the principal market of Singen-Hohentwiel, Germany, and in the usual wholesale quantities of 5 to 50 reams, at prices that were not generally higher than those set forth in the consular invoice. Invoices covering the sales listed in the affidavits, said exhibits 24 and 25, which referred to the merchandise in question, fairly support the testimony of said witness.

Such evidence is uncontradicted in the record before me, and, in my judgment, is sufficient to warrant the conclusion that the entered values represent the proper dutiable export value of the merchandise in question, and I so hold.

Plaintiff here relies specifically upon said exhibits 24 and 25, wherein are recited the prices at which aluminum metal-covered paper of various descriptions "was freely offered to all purchasers for export to the United States by Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen, G. m. b. H. without any restriction as to disposition" during the periods from June 1, 1934, to August 31, 1936, September 1, 1936, to February 10, 1937, February 11, 1937, to December 3, 1937, and December 4, 1937, to the dates the affidavits were signed, namely, October 20, 1939, and May 15, 1940.

Plaintiff Nicholas Gal testified that when he gave the characteristics and uses of aluminum metal-covered paper manufactured by Tscheulin and by other German manufacturers, he was referring to Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H., whose products he saw in the markets of the United States; and that he was familiar with the prices shown in paragraph 5 of each of said exhibits. By contacting his customers, he was able to find out what his competitors were doing and was able to get information about the type, quality of paper, and the price of paper they were exporting to this country to customers he sold and to

those he did not sell. He stated that prices of aluminum metal paper vary in accordance with the weight of the paper, the weight of the foil, the combination of the two, and whether or not the papers were embossed or colored.

Insofar as invoice items hereinabove listed as 1, 3, 4a and b, 5a and b, and 7 were concerned, the witness was able to identify them within the descriptions set forth in paragraph 5 of each of said exhibits, including where applicable the additional charges specified by the affiant for embossing and color, with the explanation that in the trade white and silver mean the same thing; and that the notation ".009/10 mm" refers to a thickness of foil from 0.009 to 0.010 millimeters, inclusive. The figure which the witness selected from said exhibits as the price for each of these items did not in every instance conform with the prices prevailing on or about the dates of exportation of the merchandise at bar, which were July 24, 1937, in reappraisement 139494–A, and July 9, 1938, in reappraisement 139535–A, but this inaccuracy can in no way affect the issues, as prices for those dates are, in fact, specified.[2]

With respect to invoice items hereinabove listed as 2, 6, and 8, where similar descriptions could not be found in said exhibits 24 and 25 in the incorporated record, the witness stated that prices could be

[2] Paragraph 5 of said collective exhibit 24 reads in part as follows:

5) That from January 1, 1935 to the date of the signing of this affidavit, Aluminium Metal Covered Paper, the same as the Aluminium Metal Covered Paper covered by the sales listed in paragraph 4, was freely offered to all purchasers for export to the United States by Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H. without any restriction as to disposition at the following prices:

| Date to Date: | Description: | | | Price Cif New York, per ream 480's 20 x 26'': | Equivalent price Fob Singen-Hohentwiel, packing included per ream 480's 20 x 26'': |
|---|---|---|---|---|---|
| | 0.009/10 mm silver plain, backed to: | | | | |
| * | * | * | * | * | * |
| 11–2–37 to 3–12–37 | 30/35 grs. Cellulose | RM. | | 18.05 | $6.98 |
| | 40 " " | | | 18.65 | 7.26 |
| | 60 " " | | | 19.90 | 7.60 |
| | 50 " Edelweiss | | | 20.85 | 8.20 |
| | 60 " " | | | 21.65 | 8.30 |
| | 80 " Cellulose | | | 21.30 | 8.08 |
| | 120 " " | | | 25.35 | 9.56 |
| | Colours plus | | | 8.35 | 3.34 |
| | Embossing plus | | | 2.70 | 1.08 |
| since 4–12–37 | 30/35 grs. Cellulose | RM. | | 16.70 | $6.44 |
| | 40 " " | | | 17.25 | 6.62 |
| | 60 " " | | | 18.40 | 7.— |
| | 50 " Edelweiss | | | 19.30 | 7.40 |
| | 60 " " | | | 20.— | 7.64 |
| | 80 " Cellulose | | | 19.70 | 7.44 |
| | 120 " " | | | 22.65 | 8.48 |
| | Colours plus | | | 7.72 | 3.09 |
| | Embossing plus | | | 2.50 | 1.— |
| * | * | * | * | * | * |

All figures including agent's commission and cash discount, if any.

ascertained by what he called "interpolation"; that is, in the case of a 50-gram cellulose backing for 0.010 foil, for example, the addition to the price of 40-gram cellulose backing, of half the difference between 40- and 60-gram cellulose, would result in the price of a 50-gram backing. A like "interpolation," but between 60- and 80-gram cellulose backing, would provide the price of a 70-gram backing. For item number 6, the witness stated:

> On this next entry the first invoice is for .015 millimeter foil backed with 80 gram gold cellulose paper. Now, we do not have on Exhibit 24 the .015——

> \*        \*        \*        \*        \*        \*        \*

> We find the price of the .010 foil, which is $7.44 per ream. Because we have 50 percent more foil, weight of foil, we interpolate by adding 50 percent to the price of the .010, in other words to $7.44 per ream, which is the price for the .010 foil paper, we add 50 percent, $3.72. We further add for the gold finish $3.09, arriving to the price of $14.25 per ream.

Mr. Gal testified that it was the practice in the trade to make these interpolations to determine the prices of articles not specifically designated on price lists. He was not sure, however, whether his competitors freely offered aluminum metal-covered paper for sale at prices which he reached by interpolation. At one point he stated that, according to his best knowledge, his competitors did not sell a 50-gram cellulose paper; that they probably sold either 0.009- or 0.010-millimeter paper, but not paper designated as 0.009/10 mm; and that they did not use an edelweiss backing. At another point in his testimony, he stated that he did not know. Neither is there other affirmative evidence of record to show whether or not competitive German manufacturers freely offered aluminum metal-covered paper of those specifications for sale. That the witness was in error in portions of this testimony is evidenced by the extract from said exhibit quoted, *supra.*

It further appears that, whereas the prices in collective exhibit 24 and in exhibit 25 are unit prices per ream of 480 sheets, 20 by 26 inches in size, plaintiff's home factory prices were predicated either upon a ream of 500 sheets, 20 by 26 inches in size, or upon a ream of 167.5 square meters. Since, however, ream measurement reflects a surface area, rather than weight, size, or thickness, the difference in basic units is of no moment here.

Counsel for plaintiff argues that the decision and judgment of this court in the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States, supra,* are *stare decisis* of the issue of there being an export value of aluminum metal-covered paper manufactured and sold for exportation to the United States by Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H., and that, since this court has held affirmatively on the question of similarity, the prices listed in said exhibits 24 and 25, for items corresponding with the

present invoice descriptions, as indicated by witness Gal, represent the export values of similar merchandise and are, therefore, here applicable. Where said exhibits are without matching descriptions, it is urged that the prices arrived at by interpolation should be adopted.

Counsel for the Government makes the argument that the invoice prices and the affidavits in the incorporated case may not be taken as evidence of the export value of similar merchandise, as the issues in the two cases are not the same; that there is no competent proof of the value of similar merchandise; and that plaintiff, in order to prevail, ought to have established the principal market, the freely offered price, and the usual wholesale quantities of merchandise shown to be similar to the items at bar.

I am of opinion, as heretofore indicated, that, taken as a whole, the record before me shows that the products manufactured by Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H. bore that degree of similarity with those of Tscheulin as to constitute both types similar merchandise within the meaning and intent of section 402 (d) of the Tariff Act of 1930, which contains the following definition of export value:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The issue as to the sufficiency and competency of the evidence in the incorporated case to establish export value of aluminum metal-covered paper manufactured and sold for exportation to the United States by said Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H. has been resolved favorably to that contention and, under the principle of *stare decisis* (*Sol Raphael* v. *United States*, 23 C. C. P. A. (Customs) 253, T. D. 48110), is controlling here. Accordingly, where descriptions of the merchandise set forth in said exhibits tally with the invoice descriptions in the instant case, as indicated by the witness Gal, the prices thereof may be adopted as representative of export values of similar merchandise, proper allowance being made for the additional processing of embossing and/or color. I, therefore, find export value to exist for merchandise similar to items hereinabove referred to as 1, 3, 4a and b, 5a and b, and 7.

As to items 2, 6, and 8, the evidence is insufficient to establish that merchandise of similar grades and qualities was, at or about the dates

of exportation with which we are here concerned, freely offered for sale to all purchasers in the ordinary course of trade. Under the circumstances, I regard it as wholly improper to attempt to find a value therefor by the methods of interpolation suggested by plaintiff. As stated in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714:

> It may be said in this connection that the statute plainly provides that the dutiable value of the imported goods shall be fixed at the market value or price of such or similar goods offered for sale abroad. It can not, therefore, be fixed by comparison, by taking some proportionate part of the foreign value of comparable goods of different grade or value. It must be *the value or price* of *such* or *similar* goods. [Italics quoted.]

The case of *United States* v. *Freedman & Slater, Inc. (Household Utilities Mfg. Corp.)*, 25 C. C. P. A. (Customs) 112, T. D. 49241, has been cited by counsel for plaintiff as authority for the proposition that adjustments may be made in determining the value of imported merchandise. Counsel for the Government relies on the same case for the converse of this proposition. I am of opinion that the principle, as expressed in *United States* v. *Massin & Bros., supra,* and *United States* v. *Alatary Mica Co.,* 19 C. C. P. A. (Customs) 30, T. D. 44871, that value may not be found by comparison with a proportionate part of similar merchandise, was not involved in the *Freedman & Slater* case, *supra.* This is apparent from the following quotation therefrom:

> It thus appears from the testimony of Bunn and the Treasury attaché's report that the *identical* machines imported here were sold and offered for sale in Germany, and that when so offered or sold, the basic price of the machine must be increased by 1.20 or 1.50 reichsmarks per machine, when equipped with a turnscrew and chrome knife, as these imported machines were equipped. The burden was upon the appellee to establish that the foreign value found by the local appraiser did not constitute foreign value. It did not maintain such burden and, hence, there is no substantial evidence in the record to sustain a finding that the values found by the local appraiser were not the correct foreign values of the imported machines. [Italics supplied.]

There being no evidence that qualities of aluminum metal-covered paper, similar to those represented by said items 2, 6, and 8, were, in fact, freely offered for sale, it is immaterial that it was the practice in the trade to obtain prices for intermediate grades by interpolation.

I am, therefore, of opinion that plaintiff has established export values for papers, similar to said items 1, 3, 4a and b, 5a and b, and 7, but has failed to do so in respect to items 2, 6, and 8. Accordingly, I find that—

1. The merchandise covered by these appeals for reappraisement consists of aluminum metal-covered paper exported from Germany in July 1937 and July 1938.

2. At the times of exportation thereof, such or similar merchandise was not freely offered for sale for home consumption in Germany.

3. At the times of exportation thereof, such merchandise was not freely offered for sale to all purchasers in the principal markets of Germany for exportation to the United States.

4. At or about said dates or exportation, aluminum metal-covered paper similar to items hereinabove referred to as 1, 3, 4a and b, 5a and b, and 7 was freely offered for sale for exportation to the United States to all purchasers in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade at the following prices, respectively, packing included:

| | |
|---|---|
| Item 1_____ | $7.60 per ream, 20 by 26 inches by 480 sheets. |
| " 3_____ | 8.68 per ream, 20 by 26 inches by 480 sheets. |
| " 4a_____ | 7.60 per ream, 20 by 26 inches by 480 sheets. |
| " 4b_____ | 10.94 per ream, 20 by 26 inches by 480 sheets. |
| " 5a_____ | 10.94 per ream, 20 by 26 inches by 480 sheets. |
| " 5b_____ | 14.28 per ream, 20 by 26 inches by 480 sheets. |
| " 7_____ | 8.00 per ream, 20 by 26 inches by 480 sheets. |

5. As to items hereinabove referred to as 2, 6, and 8, there is not sufficient evidence to establish either that merchandise similar thereto was freely offered for sale to all purchasers for exportation to the United States, or was not so offered.

I therefore conclude that—

1. At or about the dates of exportation of the merchandise at bar, there was no foreign value therefor, as that value is defined in section 402 (c) of the Tariff Act of 1930, or as amended by the Customs Administrative Act of 1938.

2. At the times of exportation of said merchandise, there were export values, as defined in section 402 (d) of said act for aluminum metal-covered paper similar to items hereinabove referred to as 1, 3, 4a and b, 5a and b, and 7, and that such values are as set forth in finding of fact numbered 4.

3. That, as to items hereinabove referred to as 2, 6, and 8, plaintiff having failed to overcome the presumptively correct appraised values, I find the values thereof to be as returned by the appraiser.

Judgment will be entered accordingly.

(Reap. Dec. 8574)