## UNITED STATES v. F. C. GERLACH & CO. ET AL.

No. 5443.—Invoices dated Singen-Hohentwiel, Germany, September 23 and August 21, 1936.
Certified September 29 and August 29, 1936.
Entered at New York October 9 and September 14, 1936.
Entry Nos. 749030 and 734222.

Third Division, Appellate Term

(Decided September 25, 1941)

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.

*Eugene R. Pickrell* for the appellees.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge in *F. C. Gerlach & Co. et al.* v. *United States*, Reap. Dec. 5084, and relates to the value of aluminum foil in rolls exported by Breisgau-Walzwerk of Singen-Hohentwiel, Germany in August and September, 1936.

Reappraisement 128263–A covers aluminum foil .00035-inch gauge, width 16½ inches, entered on the basis of export value at 36¾ cents, United States currency, per pound, packing included, less consul fee, inland freight and insurance. The merchandise was returned by the appraiser on the basis of foreign value at 3.50 reichsmarks per kilo, less 2 per centum discount and plus cases and packing.

Reappraisement 128264–A covers aluminum foil .002-inch gauge, width 26¾ inches, entered on the basis of export value at 44 cents, United States currency, per pound, packing included, less consul fee, insurance, inland freight, ocean freight, and United States duty. The merchandise was invoiced at the delivered price in New York, United States duty included. Return by the appraiser was made on the basis of foreign value at 2.85 reichsmarks per kilo, less 2 per centum discount, plus cases and packing.

The trial judge appraised the merchandise on the basis of export value at the entered prices and held that the basis of foreign value was not applicable for purposes of appraisement because aluminum foil which is made for sale and use in Germany is different in several characteristics from that exported to the United States, and, furthermore, the sales of such commodities for use in the home market in Germany were controlled or restricted.

The appellant does not contend before this division that the merchandise should be appraised on the basis of foreign value as returned by the appraiser, the only contention being that the plaintiff below failed to prove all the elements necessary to establish export value and that in the absence of sufficient proof the trial court should have dismissed the appeal.

At the trial below, the first witness called by the plaintiff (the appellees herein) was Mr. Frank V. Paul who is vice president of Adolphe Hurst & Co., Inc., which company made the entry in reappraisement 128264–A. He testified that Adolphe Hurst & Co.,

Inc., is the sole agent in the United States for Breisgau-Walzwerk, of Singen-Hohentwiel, Germany, the shipper of the merchandise in these cases, and he produced a copy of his written contract which was admitted in evidence and marked exhibit 1. The witness explained his usual procedure in making sales in this country as follows:

The procedure which I followed was that  *  *  *  I went out and visited and solicited the consuming trade in the United States for this foil. Most of them were known to me personally. When one of them was in the market for aluminum foil, I usually found out from him what quantity he desired and the approximate price he would be willing to pay. The usual procedure was that I cabled the factory abroad, Breisgau-Walzwerk, told them the name of the customer with whom I had negotiated, the tonnage involved, and asked them for their latest quotation by cable, and they usually answered the next day and gave me the quotation for the material. And I went back to the customer with the price and tried to obtain the order. In some cases the order was forthcoming, and in others it was not. If the price was in line with the customer's ideas he placed the order, if it did not meet with his approval, he did not. It was sometimes necessary for us to go back for a second quotation to the factory. In cases where I was successfully able to obtain the order, I went back to the office and usually sent them the order by cable, and immediately sent them a written confirmation by mail, giving them the quantity, the price, and other necessary information. In due course, we got the order acknowledgment from the factory made out to the customer in this country. This confirmation was turned over to them. In due course, the merchandise arrived in this country. It was duly delivered to the customer's place of business, and in the usual amount of time it was paid for according to the terms.

The witness testified further that Adolphe Hurst & Co., Inc., receives a commission of 5 per centum on all sales they make, and, when they buy merchandise for their own account, they receive a discount of 5 per centum; that sometimes the manufacturer negotiates directly with the customer and on sales made under such circumstances the manufacturer pays his firm the 5 per centum commission when the customer pays Breisgau-Walzwerk for the merchandise; that sales had been made by the manufacturer directly to Standard Rolling Mills, Inc., and also to another firm in Brooklyn, N. Y.; that in cases where his company makes a sale he usually collects the bill, and, after deducting the duty, expenses, and his commission, sends the remaining funds to the manufacturer.

As to the particular shipments herein involved, the witness testified that the merchandise covered by reappraisement 128263–A was sold by him to Standard Rolling Mills, Inc., and the merchandise was shipped by the manufacturer directly to that firm; that entry was made by Standard Rolling Mills, Inc., and payment for the goods was made by them directly to Breisgau-Walzwerk; that the merchandise covered by reappraisement 128264–A was sold by him to Peters Bros. Rubber Co., but the entry was made by Adolphe Hurst & Co.; that in both instances his firm sent the order to Breisgau-Walzwerk and received a written confirmation from the manufac-

turer which was sent by him to the customer; that his firm collected the bill from Peters Bros. Rubber Co., covering the merchandise under reappraisement in 128264–A, and made payment to Breisgau-Walzwerk at the invoice prices less duty, cartage and commission.

The witness testified further that other manufacturers in Germany sell comparable merchandise to customers in the United States and he had seen foil manufactured by firms other than Breisgau-Walzwerk in places of business of various customers in the United States. A copy of the order to the manufacturer for the merchandise covered by reappraisement 128263–A was admitted in evidence and marked exhibit 2.

On cross-examination the witness produced a copy of the order for the merchandise covered by reappraisement 128264–A and it was admitted in evidence and attached to exhibit 2. The witness testified that in a number of cases he sold merchandise in this country on a duty paid basis; that in making sales he generally asked the manufacturer for a price and then went to the customer to see if he would pay that price, and, if he would, he took the order, but, if the customer would not pay the price asked, he endeavored to get the manufacturer to reduce the price; that Breisgau-Walzwerk had no price lists but they quoted prices every time he asked for them; that the prices fluctuated very little during the year 1936; that the only price he could remember for .00035-inch gauge foil was 36¾ cents per pound f. o. b. Hamburg; that the price for small quantities was approximately ½ or 1 cent per pound higher; that he did not recall any sales made by the manufacturer for export to the United States in 1936 at prices lower than 36¾ cents per pound. Counsel for the defendant below called upon the witness to produce an acceptance of the order for the goods covered by appeal 128263–A and copies of other sales of .00035-inch gauge foil during the year 1936 and the judge presiding at the trial ordered the witness to produce copies of all of the sales he made.

The witness appeared again at a subsequent date and produced the acknowledgements of the orders covered by the two reappraisements herein involved and they were made a part of exhibit 2, the correct reappraisement numbers being marked thereon. The witness produced also copies of all of his other orders and the manufacturer's confirmations for the year 1936 and they were admitted in evidence and marked exhibit 10. The witness corrected his testimony previously given on cross-examination with respect to sales of aluminum foil in small quantities. He said that he actually made some sales in small quantities at prices even lower than those made in large quantities. He did not state whether or not the sales in small quantities at prices either lower or higher than the invoice values were of merchandise which he had in stock, but the orders in exhibit 10 which he

sent in to the manufacturer during the year 1936 have prices which are uniform for each quality of foil.

The second witness called by the plaintiff below was Mr. Don E. Campbell who is vice president in charge of sales at the Standard Rolling Mills Co., Inc., the party in interest in reappraisement 128263–A. He testified that the merchandise covered by that reappraisement was purchased from Breisgau-Walzwerk and payment therefor was made to that firm by purchasing askimarks through the Guaranty Trust Co. of New York which were cabled to the Deutsche Bank in Berlin with instructions to pay Breisgau-Walzwerk. The records covering the transaction, including a canceled check, were admitted in evidence and marked exhibit 3. The witness testified further that he was in Germany from February to May, 1935, and Breisgau-Walzwerk and also other manufacturers offered him aluminum foil for export to the United States; that he had purchased aluminum foil of .00035-inch gauge from Rheinesche Blattmetall in 1936 and had placed orders for such merchandise through Bradley & Baker; that when he was in Germany in 1935 the prices for aluminum foil quoted by the different manufacturers were very close but he always got a lower price than was asked.

The plaintiff below then produced six affidavits which were received in evidence and marked as follows: Collective exhibit 4, consisting of an affidavit of the export manager of Breisgau-Walzwerk, dated October 29, 1939, attached to which are a number of copies of invoices; exhibit 5, another affidavit of the export manager, dated February 10, 1940; exhibit 6, an affidavit of Alfred Herklotz, sales manager of the manufacturing company, dated February 10, 1940, with English translation; exhibit 7, another affidavit of Alfred Herklotz, dated October 20, 1939, with translation; exhibit 8, an affidavit of Fritz Gischas, plant manager for the manufacturing company, dated October 20, 1939, with English translation; exhibit 9, an affidavit of Dr. Rudolf Görnandt, managing director of the Aluminum Foil Association of Germany, dated October 18, 1939.

The plaintiff below introduced also the testimony of Mr. Fred C. Guerriero, a customs examiner at the port of New York and the defendant below introduced the testimony of Mr. Christopher Senese, an examiner's clerk at the port of New York. We have examined this testimony and find that it relates to the examination of the merchandise. The plaintiff below attempted to prove that the appraisement was void because of an improper designation of cases and examination of the merchandise, but, as the trial judge overruled his claim and there was no application for review filed against his ruling, we deem it unnecessary to review that testimony.

The defendant below then introduced the following customs agent's reports: Report of Assistant Treasury Attaché Paul Hermes, No.

189/36, dated October 19, 1936, admitted as exhibit 15; report of Customs Agent W. J. Murphy, dated at New York, on January 19, 1940, exhibit 16; report of Treasury Attaché Erwin G. May, No. 322/34–B, dated September 11, 1935, exhibit 17; report of Treasury Attaché Erwin G. May, No. 11/37–A, dated March 5, 1937, exhibit 18; report of Treasury Attaché Erwin G. May, No. 640/–, dated March 1, 1939, exhibit 19.

Exhibit 1, which is the agreement between Adolphe Hurst & Co. and Breisgau-Walzwerk, dated May 22, 1930, verifies the testimony of Mr. Paul to the effect that Adolphe Hurst & Co., Inc., has the sole agency in the United States for aluminum foil manufactured by Breisgau-Walzwerk and receives a commission of 5 per centum on all sales or a discount of 5 per centum when Adolphe Hurst & Co., Inc., is the purchaser for stock or for further sales; that when a sale on commission is contemplated by Adolphe Hurst & Co., Inc., the manufacturer, upon request, must notify that firm of the prevailing market price of the goods; that the manufacturer has the right to do business directly with customers in the United States. The latter provision of the contract is contained in paragraph (f), reading as follows:

The party of the First Part (Breisgau-Walzwerk) furthermore has the right to do business directly with the customers, of course under corresponding commission protection for the Party of the Second Part (Adolphe Hurst & Co.) and prompt communication of the entire transaction to the Party of the Second Part.

Exhibits 2 and 10 contain copies of all the orders sent to the manufacturer during the year 1936 with acknowledgements thereof by the manufacturer. These orders show sales of aluminum foil .002-inch gauge at 44 cents, United States currency, duty paid and delivered in the United States of 8,000 pounds on February 26, 8,000 pounds on April 17, 5,000 pounds on May 2, 4,000 pounds on July 7, 4,000 pounds on August 6 and 8,000 pounds on October 7. Order for aluminum foil .00035-inch gauge at 36¾ cents per pound, f. o. b. Hamburg, packing included are 25,000 pounds on February 5, 100,000 pounds on March 14, 20,000 pounds on March 17, 20,000 pounds on April 23, 100,000 pounds on April 28, 20,000 pounds on June 1, 20,000 pounds on June 30, 10,000 pounds on July 13, 10,000 pounds on August 5, 20,000 pounds on August 14, 80,000 pounds on August 28, and orders at 48 cents per pound, delivered duty paid in New York of 2,000 pounds on June 10, and another order for 2,000 pounds on June 10.

It is evident from an examination of these exhibits that the uniform price for .002-inch gauge foil was 44 cents per pound, duty paid and delivered in the United States, and, for the .00035-inch gauge, 36¾ cents, f. o. b. Hamburg, irrespective of the quantity ordered. The two orders of the .00035-inch gauge foil at 48 cents per pound is explained by the fact that the price included the United States duty and

delivery to the United States and the net price which the manufacturer received therefor would be very close to that which he received for the merchandise sold at 36¾ cents per pound, f. o. b. Hamburg.

Exhibit 4 lists a number of offers for different gauges of aluminum foil and appears to cover some of the same goods covered by the orders in exhibit 10. The exhibit contains also a list of sales at the same prices with the exception of one sale of the .00035-inch gauge on January 1, 1936, at 50 cents per pound, delivered in New York, duty paid, but that sale is too remote to be of value in this case. Copies of the invoices covering those sales are attached to the exhibit and an examination thereof indicates that all sales were not made through Adolphe Hurst & Co., Inc.

The exhibit shows also that sales were made to customers in Belgium, Egypt and Great Britain at prices less than those in the invoices in this case.

The affiant states also that from January 1, 1935 to the date of the affidavit the usual wholesale quantity in which the merchandise was sold both to the United States and to other countries was 1,000 pounds and that the principal market in Germany was Singen-Hohentwiel and that the prices at which such or similar merchandise was freely offered for sale for export to the United States during the period from January 1, 1935 to the date of the affidavit by firms other than Breisgau-Walzwerk "were generally not higher than the prices as set forth in the consular invoices" in this case.

Exhibit 5 contains some of the same statements that are found in exhibit 4, with nothing new added.

Exhibits 6, 7 and 9 contain statements relating to sales of aluminum foil for consumption in Germany showing that sales of such merchandise are controlled and restricted and exhibit 8 shows that aluminum foil made for use in Germany has different characteristics from that sold for export to the United States. As the appellant does not claim before this division that the merchandise is dutiable at the foreign value, these exhibits need not be reviewed.

Exhibit 15 is a report of the assistant Treasury attaché who visited the manufacturer of the merchandise herein involved and investigated a shipment prior to the ones herein. It appears that the shipment under investigation consisted of foil of .00035-inch gauge invoiced at 36¾ cents per pound f. o. b. Hamburg, and an inspection of the books showed that such was the price paid. The statements of witness Paul as well as the statements of the affiant in exhibits 4 and 5 are substantially corroborated in this exhibit, the only substantial difference being that the report states that the usual wholesale quantities exported to the United States were between 3,000 and 20,000 pounds. However this does not contradict the statement of the affiant that the usual wholesale quantity is considered to be 1,000 pounds.

Exhibit 16 does not contain anything which has not been discussed heretofore. The testimony of witness Paul with respect to the orders for the goods in this case is corroborated therein.

Exhibits 17, 18, and 19 refer to conditions in the home market in Germany and contain price lists for the kind of aluminum foil which is sold in Germany. In view of the scope of this appeal, wherein the appellant does not claim that the merchandise should be appraised on the basis of foreign value, these exhibits are of no value.

We are unable to agree with the contention urged by appellant to the effect that the evidence in the record fails to establish export value. The evidence clearly shows that the merchandise was freely offered and sold to all customers in the United States, either by the manufacturing company or by its New York agent, during the period covered by these shipments and several months prior thereto at substantially the same prices as are shown on the invoices. The only advantage which the agent held is that he had the sole selling rights outside of the manufacturing company, and, under the terms of the contract, the manufacturer could not employ any other American selling agent. Before making a sale, the agent always cabled the manufacturer for current prices, and, after the order was forwarded to the manufacturer, an acknowledgement directed to the customer was sent to the agent for transmission to the customer and the sale was then complete. Under such circumstances, the sales by the agent must be considered as sales by the principal. This is not a case where the manufacturer restricted his sales to one American customer. The manufacturer, and also the agent acting in behalf of the manufacturer in the negotiations, freely offered the merchandise for sale to all customers in the United States. Substantially the same facts were held to establish export value in the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States,* Reap. Dec. 5097, affirmed in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* Reap. Dec. 5329.

The appellant cites *United States* v. *Massce & Co. et al.,* 21 C. C. P. A. 54, T. D. 46379, in its brief, and states:

The facts in that case are in all material respects identical to the facts in the cases at bar. There, the foreign manufacturer maintained a selling agent in the United States who offered the merchandise to purchasers in the United States. The Court of Customs and Patent Appeals held that no export values could be found * * *.

We have carefully examined that decision and are of opinion that the. facts are somewhat different in that case. The manufacturer owned and maintained a selling office in the United States. The goods involved consisted of embroidered articles which were to be manufactured after the orders were taken as each customer desired exclusive patterns. The customers submitted designs to the selling agency which were forwarded to the manufacturer in Switzerland, and, if the

manufacturer found it was able to execute the work represented by the designs, the selling agency accepted the order. In explaining the procedure, the court said at page 57:

The fact appears to be that all offers for sale and all sales of merchandise such as or similar to the merchandise here involved were made in the United States and none were made in Switzerland. The mere fact that designs of merchandise were accepted in Switzerland before the contract made in the United States became complete does not constitute offers for sale in Switzerland. It appears from the record that no purchasers in the United States transmitted to Switzerland offers to buy merchandise such as is here involved, and no offers to sell such merchandise were made in Switzerland. It further appears that there was no contractual relationship entered into in Switzerland between the manufacturer and the purchasers in the United States. We think the fair import of the evidence is that the branch house of the manufacturer in New York sent to Switzerland orders for designs, and that the orders were finally accepted or rejected by the New York branch house. In other words, the acceptance of the design was, so far as the United States purchaser was concerned, made in New York and not in Switzerland, for apparently the manufacturer in Switzerland had no communication or relations with purchasers in the United States.

The acknowledgement of the orders which are parts of exhibits 2 and 10 in this case are signed by the manufacturer and are all directed to the customers and they indicate a contractual relationship between the manufacturer and the customers. The agent in this case is not a branch of the manufacturing concern and it is apparent that all the agent does is to take orders at the prices dictated by the manufacturer and send them to the manufacturer for confirmation. The court said in the *Massce & Co.* case, *supra*, that if the orders had been transmitted to the manufacturer before acceptance then export value would would have been established. We quote from the decision:

So here, if offers by purchasers had been transmitted to Switzerland and there accepted by the Swiss manufacturer, we should not hesitate, under the facts in this case, to hold that export value was established and that it was immaterial where or when the title passed from the foreign seller to the purchaser.

The trial judge held that the facts in this case are more nearly like those in *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486, where the court held that merchandise offered for sale for export to the United States both by the manufacturer in Switzerland and by the manufacturer's agent in New York was dutiable at the export value as defined in section 302 of the Emergency Tariff Act of 1921.

The appellant claims further that export value is not established by the evidence because the plaintiff below failed to show the prices at which manufacturers other than the shipper in this case offered.the same or similar merchandise for sale for exportation to the United States, citing *United States* v. *Rodier, Inc.*, 23 C. C. P. A. 336, T. D. 48196, and *United States* v. *International Forwarding Co., Inc., et al.*, 27 C. C. P. A. 21, C. A. D. 56. While the plaintiff below failed to

offer specific evidence showing the prices which manufacturers other than the shipper in this case offered .00035-inch and .002-inch gauge foil for export to the United States, it appears from the testimony of witness Don E. Campbell that the prices for aluminum foil manufactured by other concerns were very close to those offered by Breisgau-Walzwerk and the following statement on that subject appears in exhibit 4:

(22) That the prices at which Aluminium Foil, such as or similar to the Aluminium Foil covered by consular invoices listed in paragraph 4 (the invoices covered by these appeals) were freely offered for export to the United States during the period from January 1, 1935 to the date of the signing of this affidavit, by concerns other than the Breisgau-Walzwerk G. m. b. H. and Aluminium-Walzwerke Singen G. m. b. H. were generally not higher than the prices as set forth in the consular invoices covered by paragraph 5;

The case of *United States* v. *International Forwarding Co., Inc., et al., supra*, involved a different principle from that in this case as presented to this division. The merchandise in that case was appraised on the basis of foreign value by the appraiser and the trial court appraised the merchandise on the basis of export value because all sales by the manufacturer in the country of production were restricted or controlled. The record did not contain evidence showing the practice under which manufacturers other than the shipper sold the same or similar goods in the markets of the country of production and the appellate court held that, inasmuch as the appraiser's finding of value had the presumption of correctness, the burden was on the importer to disprove that finding by establishing the facts in relation to all elements which may have been considered by the appraiser, that is, by showing not only that the manufacturer restricted his sales but also that other manufacturers offered the goods in Germany under the same restrictions as the manufacturer of the merchandise therein involved.

There is no presumption of correctness to overcome in this case with respect to export value because the appraiser did not adopt export value as the basis of appraisement and we are of opinion that the evidence in the record to the effect that the prices at which manufacturers other than the shipper in this case sold the same or similar goods for export to the United States are "very close" or "not generally higher" than this manufacturer's price, is sufficient to meet the burden cast upon the plaintiff below in its effort to establish export value.

In the case of *United States* v. *Rodier, Inc., supra*, the usual wholesale quantity was the point involved and testimony was introduced with respect to the usual wholesale quantity in which the goods were sold by firms other than the shipper, and, although the United States contended that the witnesses were not properly qualified, the court held that there was some evidence in the record to sustain the facts found by the United States Customs Court.

The appellant contends further that the sale of the .00035-inch gauge foil to Standard Rolling Mills, Inc., cannot be considered for the purpose of establishing export value because that company gave one order for 100,000 pounds which is in excess of the usual wholesale quantity, the instant shipment being a part of that order. This argument is not made with respect to the .002-inch gauge foil covered by reappraisement 128264–A evidently because that shipment consisted of a small quantity. While it is stated in exhibit 4 that 1,000 pounds is the usual wholesale quantity and in exhibit 15 that the quantity usually delivered varies from 3,000 to 20,000 pounds, the sales of the .00035-inch foil heretofore referred to in this decision show that the manufacturer was getting the same price irrespective of quantity. In such case the quantity of the sale does not become important as no question of usual wholesale quantity can arise. It is evident that Standard Rolling Mills, Inc., did not receive a lower price because a large quantity was purchased when other dealers made purchases of smaller quantities at the same price. In the case of *Jenkins Bros.* v. *United States*, 25 C. C. P. A. 90, 96, T. D. 49093, the court said:

Of course, where the price at which an article is sold does not vary according to quantities sold, no question of usual wholesale quantity can arise, and in such case a single article may sometimes be regarded as a usual wholesale quantity.

The appellant contends also that the trial judge erred in deducting the freight from the principal market (Singen-Hohentwiel) to Bremen on the .00035-inch gauge foil in appeal 128263–A because the price quoted in the acceptance of the order for 100,000 pounds in exhibit 2 is 36¾ cents per pound f. o. b. Hamburg. The appellant argues that under the decisions in *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454, *United States* v. *Traders Paper Co.*, 14 Ct. Cust. Appls. 293, T. D. 41909, and *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. 303, C. A. D. 159, no deduction for freight should be allowed. The cases cited all relate to foreign value of imported merchandise. It appears that the manufacturers sold goods delivered throughout the country of manufacture at stated prices, and the court held that the delivered price was the foreign value. On goods destined for export, the court held that the freight from the principal market to the seaport should not be deducted. That was because the foreign value included the freight to any point in the country of production. This case involves export value and raises a different question because this merchandise is not sold in Germany or offered for sale at a delivered price to all parts of that country. The sales of the .00035-inch foil enumerated in exhibit 4 show sales at 48 cents per pound delivered duty paid in New York and in Boston and sales at 36¾ cents per pound f. o. b. Hamburg, but the affiant gives the equivalent f. o. b. Singen-Hohentwiel price of those sales with the freight and other expenses deducted and it appears that the manu-

facturer actually received more on the sale at 36¾ cents per pound f. o. b. Hamburg than for the merchandise delivered at the other cities. Therefore the entered price of the .00035-inch gauge foil covered by appeal 128263-A was higher than the price which the manufacturer received when sales were made at 48 cents per pound delivered in New York and Boston, duty paid. The f. o. b. factory price was not the same as the f. o. b. delivered price and the principle announced in the cases cited, which relate to foreign value rather than export value, is not pertinent in this case.

The appellant urges further that the trial judge erred in ascertaining the net dutiable value of the .002-inch gauge foil covered by reappraisement 128264-A because he directed that a deduction be made for duty at the rate of 40 per centum ad valorem from the New York delivered price. The appellant contends that the plaintiff below failed to establish the export value of the goods because the record does not show the actual amount of duty paid and that the only way the correct value could be ascertained would be by deducting the duty that was paid. This contention is without merit because as a matter of customs practice the actual duty is not ascertainable until liquidation, and liquidation cannot occur until after the final appraisement in this case. The finding of the trial judge that duty should be deducted at the rate of 40 per centum ad valorem is clearly sufficient.

We approve and adopt the findings of fact and conclusions of law made by the trial judge and his decision is affirmed.