(Reap. Dec. 8168)

S. STERN HENRY & Co. *v.* UNITED STATES

Entry No. 23886.

(Decided October 8, 1952)

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

OLIVER, Chief Judge: The sole question in this appeal for reappraisement is whether an item of freight from the principal market in the country of exportation to the shipping port is part of export value, which is defined in section 402 (d) of the Tariff Act of 1930 as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Export value, section 402 (d), *supra*, is concededly the proper basis for appraisement of the shipment under consideration, consisting of 2,000 dozen mechanical toys, "Boy on Scooter," exported from Yokohama, Japan, and entered at the port of New York.

The limited issue herein is presented in the following agreed set of facts (R. 2, 3, 4):

* * * that at or about the time of exportation of the merchandise herein involved such or similar merchandise was freely offered for sale to all purchasers in Tokyo, Japan, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges and expenses incident to placing the merchandise in condition packed ready for shipment to the United States at the FOB Yokohama price appearing upon the invoice of $1.44 per dozen, which price included an item of freight to shipping port of $154.80. That the merchandise was appraised on the basis of exported value as defined in Sec. 402 (d) of the Tariff Act of 1930 which represents the proper basis for appraisement herein.

That at or about the time of exportation such or similar merchandise was not freely offered for sale for home consumption in Japan.

That the only issue involved is whether the amount included as freight to shipping port forms part of the statutory export value.

That if the amount included as freight to shipping port forms no part of the statutory export value of the merchandise, then the appraised value less the amount of such freight represents the statutory export value thereof.

That if the amount included as freight to shipping port forms part of the statutory export value of the merchandise then the appraised value represents the statutory export value thereof.

That at or about the time of exportation herein Tokyo was the principal market in Japan for the sale of such or similar merchandise for export to the United States.

That at or about the time of exportation herein all sales and offers for sale of such or similar merchandise were made at Tokyo on an FOB Yokohama basis and no sales or offers for sale were made on an ex-factory basis.

In addition to the foregoing agreed facts, the contract of purchase covering the present merchandise was offered by plaintiff and received in evidence without objection from defendant (plaintiff's exhibit 1). The document shows the importer, Traveller Trading Corp., to be the buyer of the articles in question, and Boeki Cho (Board of Trade), a duly authorized agency of the Japanese Government, as the seller. That the contract provides that "Title and risk shall pass to Buyer upon issuance of on-board ocean bills of lading," is immaterial to the present issue. *United States* v. *Nicholas Gal et al.*, 15 Cust. Ct. 395, Reap. Dec. 6192. Nor do the terms of the contract providing that "delivery shall be made F. O. B., ocean vessel, Japanese port" enter into consideration of the present case, except the item described in the stipulated facts as "freight to shipping port," to which the issue herein was specifically limited at the time of trial (R. 5).

From the foregoing, the factual basis on which the instant appeal for reappraisement is presented can be summarized as follows:

(1) There is no foreign value for the merchandise in question.

(2) The freely offered price of merchandise, such as or similar to that under consideration, to all purchasers in the principal market of Tokyo, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings, and all other costs, charges, and expenses incident to placing the articles in condition, packed ready for shipment to the United States, is $1.44 per dozen, f. o. b. Yokohama, which includes "an item of freight to shipping port of $154.80."

(3) All sales and offers for sale, at the time of exportation of the present merchandise, were made at the principal market of Tokyo on an f. o. b. Yokohama basis. None was made on an ex-factory basis.

Plaintiff's contention is based on the premise that transportation charges from the principal market to seaport in the country of exportation are not part of statutory export value. The basic principle was considered in this court's recent decision in *United States* v. *International Commercial Co., Inc., and Armour & Co.*, 28 Cust. Ct. 629, Reap. Dec. 8112, wherein it was stated:

Any reading of the provision for export value contained in section 402 (d) of the Tariff Act of 1930 must reveal that the value therein contemplated is for merchandise "in condition, packed ready for shipment to the United States," that is to say, a value including the *per se* value of the goods and only those costs, charges, and expenses which accrue up to the time when the merchandise is in the said condition. Any costs, charges, or expenses, other than the foregoing, even though included in the offered price, are not part of the export value for

tariff purposes. See *United States* v. *New England Foil Corp.*, 10 Cust. Ct. 596, Reap. Dec. 5856, and *Henry D. Gee Co.* v. *United States*, 24 Cust. Ct. 508, Reap. Dec. 7772.

The cited case concerned a 20 per centum charge imposed by an agency of the Argentine Government on canned corned beef sold for exportation to the United States. Such item was held not to be part of statutory export value after finding that the "charge accrued only when the merchandise was exported from Argentina." The conclusion was expressed in this way:

It is clear that the 20 per centum I. A. P. I. charge, as well as the other nondutiable charges which have been conceded by the Government not to be part of the export value, accrued after the merchandise was "in condition, packed ready for shipment to the United States," and the finding of the court below that it was not part of the market value of the merchandise is concurred in.

The case of *Henry D. Gee Co.* v. *United States*, 24 Cust. Ct. 508, Reap. Dec. 7772, concerned a so-called equalization fee, which the court found to be an amount charged by the Canadian Wheat Board, an agency of the Canadian Government, to those who wished to export grain. The question presented was whether such an item was part of export value. In the course of its decision, the court touched upon the principle here under consideration in the following language:

\* \* \* At this date the law is well settled that true export taxes, that is, taxes which accrue *only* upon the exportation of merchandise from a foreign country, are not part of the export value of merchandise under the provisions of section 402 (d), *supra. Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172, T. D. 40065; *United States* v. *Tadross & Co.*, 14 id. 10, T. D. 41528. This ruling is based upon the reasoning that the export value section of the tariff act seeks to ascertain the market value (as that term is defined in the section) of goods in the foreign market at the time when such goods are "packed ready for shipment to the United States," i. e., prior to shipment, and hence when such export taxes accrue *upon* exportation they form no part of the market value of the merchandise in the foreign market at the time contemplated by the valuation statute. [Italics quoted.]

In the said *Henry D. Gee Co.* case, *supra*, the court also observed that the offered price "included freight to Seattle, which all agree is not properly part of the export value of the grain in question, and it would appear that the mere fact, standing alone, that an item was included in the offered price, would be no conclusive determinant of its character as part of statutory export value."

In *United States* v. *Nicholas Gal et al.*, 15 Cust. Ct. 395, Reap. Dec. 6192, it appears that sales for exportation from Germany were made on a c. i. f. New York duty-paid price. In finding the export value, the court made allowance from the c. i. f. duty-paid price for several nondutiable items, including freight to the German shipping port.

The cases of *United States* v. *F. C. Gerlach & Co. et al.*, 7 Cust. Ct. 494, Reap. Dec. 5443, and *United States* v. *New England Foil Corp.*, 10 Cust. Ct. 596, Reap. Dec. 5856, which were cited with approval

in the *Nicholas Gal et al.* case, *supra,* also included a charge for freight from the principal market to the port of shipment among the items as being nondutiable in determining export value.

Other cases in which inland freight has been held to be no part of statutory export value are *S. C. Lyons* v. *United States,* 47 Treas. Dec. 492, T. D. 40843, affirmed in *United States* v. *Lyons,* 13 Ct. Cust. Appls. 639, T. D. 41484; *United States* v. *A. L. Tuska Son & Co., Inc.,* 1 Cust. Ct. 767, Reap. Dec. 4468; *United States* v. *American Import Co.,* 8 Cust. Ct. 737, Reap. Dec. 5642; *American Import Co.* v. *United States,* 11 Cust. Ct. 419, Reap. Dec. 5933.

Defendant's position is succinctly stated in counsel's brief as follows:

The contract shows that the merchandise was contracted for by the importer with Boeki-Cho (Board of Trade) Agency of the Japanese Government on an f. o. b. seaport basis. The invoice is in the name of the Japanese Government, Board of Trade. Thus, under the contract and the stipulation, the merchandise exported from Japan was sold for exportation to the United States on an f. o. b. seaport basis, and on this basis only. The price to be paid included freight charges to seaport. There were no sales or offers for sale at an ex-factory basis regardless of location of the factory (R. 4). Hence, *only one price existed for such merchandise,* and that was an f. o. b. seaport basis. There was no choice of prices. There was but one price, and only one manner of purchase. [Italics quoted.]

The fallacy of this reasoning is that stress is laid on the cost of securing delivery on board ship in circumstances such as are disclosed herein, where the merchandise is only sold on an f. o. b. port-of-shipment basis. The ultimate fact to be found by the court is not the cost delivered at any specific place, but is the market value or the price in the principal market of the country of exportation, packed ready for shipment to the United States.

When considering the definition of export value in the current and prior tariff acts, Congress must have taken into consideration the fact that goods are sold in the foreign markets for exportation to the United States on many different term bases, such as: Ex-factory; f. o. b. at some point other than the factory; f. a. s.; c. i. f. or c. & f., American port; c. i. f., duty paid, American port, etc.

I reason that when Congress adopted the language of export value, it intended to exclude from such definition any charges or expenses other than those which enter into the market value or price of merchandise in the principal markets of the country of exportation, packed ready for shipment to the United States.

Defendant, seeking to support the appraiser's action which included the charge of "freight to shipping port" in the appraised value, cites *United States* v. *Zellerbach Paper Co.,* 28 C. C. P. A. (Customs) 303, C. A. D. 159; *United States* v. *Heffernan Paper Co.,* 13 Ct. Cust. Appls. 593, T. D. 41454; *United States* v. *Traders Paper Co. et al.,* 14 Ct. Cust. Appls. 293, T. D. 41909. All of those cases involved determina-

tion of statutory foreign value, and each considered applicability to such value of charges for inland freight.

In the *Zellerbach* case, *supra*, inland freight covered the cost of shipping the merchandise from the places of manufacture to Hamburg or Bremen. The manufacturers sold the merchandise in Germany for home consumption and in all instances paid the freight from factory to the place where the buyer was located. The price quoted to every purchaser (no matter where located) was the same for the same quantity of merchandise, the payment of freight being implicitly included in the *per se* price. The court, recognizing the condition, stated:

* * * The mandate of the statute does not provide that there shall be one price received by the seller, but that the price accepted as foreign value shall be that at which such or similar merchandise is freely offered to all purchasers.

In holding that the item in question was not deductible in determining statutory foreign value, the court said (p. 309):

We think that in the instant case the record clearly shows that the German manufacturer of goods like those imported puts all German purchasers on the same footing, regardless of the place to which the goods are to be shipped. All purchasers for home consumption were treated alike. No one, regardless of freight charges or other expenses, was at a disadvantage over others who dealt in the same goods in Germany. The mere fact that the manufacturer received less from a transaction with a distant buyer than from a transaction with one located at or near the factory makes no difference in determining "the price" which the appraiser was required to find. If the contentions of the importer and the decisions of the tribunals below are to be approved, it would necessarily follow that goods like those at bar, shipped from different ports of Germany on the same date, would have different foreign values. If the freight to Hamburg from the point of manufacture was greater than that to Bremen, the foreign value of the goods shipped from Hamburg would be one amount and that of those shipped from Bremen would be another. This result, of course, would be anomalous, and a holding to that effect would lead the appraising officers into utter confusion. Such a result could not possibly have been within the contemplation of the framers of the Tariff Act of 1930. * *. *

It is significant that the court, after reaching its conclusion as hereinabove quoted, added the following statement (p. 310):

It must be remembered that we are not here concerned with export value or any other value except "foreign value" and there is no contention made here * * * by either party that any other value but the foreign value was the proper dutiable value for the appraiser to adopt as the basis of his appraisement.

In the *Heffernan Paper Co.* case, *supra*, which was cited with approval in the said *Zellerbach* case, the merchandise was shipped from the factory of the manufacturer in Berlin to buyers in Altona, Wismar, and Hamburg. In every instance, the cost of freight from the principal market, Berlin, to the buyer's destination, was paid by the manufacturer. In other words, the *Heffernan Paper Co.* case, *supra*, disclosed a situation comparable with that found to prevail in the

said *Zellerbach* case, where the included item of inland freight varied according to the location of the purchaser but the manufacturer's unit price remained constant.

In the *Traders Paper Co. et al.* case, *supra*, all merchandise sold for home consumption in Germany was priced at a value f. o. b. destination in Germany, and the cost of freight from the principal market, Berlin, varied according to the location of the purchaser from the mill. The factual condition, which controlled the conclusion, was substantially the same as that which prevailed in the *Zellerbach* and *Heffernan Paper Co.* cases, *supra*.

The important distinction between the *Zellerbach, Heffernan Paper Co.*, and *Traders Paper Co.* cases, *supra*, and the present one, lies, not merely in the different basis for appraisement of the merchandise—there, it was foreign value; here it is export value—but rather in the application of the item in dispute. In the three cited cases, the price packed ready for shipment in the principal market involved no consideration for an inland freight charge, since such charge only entered into transactions for delivery to places other than such principal market, even though the price for delivery in the principal market or at any other place in the country was the same.

In the present case, the agreed facts establish a definite price that includes not only all of the elements of export value, as defined in section 402 (d), *supra*, but also embodies the cost of freight, definite in amount, from the principal market, Tokyo, where, it is conceded, all offers and sales are made f. o. b. Yokohama, the seaport. This item of "freight to shipping port" is not a reality until after the merchandise has been "packed ready for shipment," and so, under the principle followed in the foregoing cited cases, where export value was held to be the proper basis for appraisement, such an item is nondutiable and does not form part of that statutory value.

For all of the reasons hereinabove set forth, I find as matter of fact:

(1) That the merchandise in question consists of 2,000 dozen mechanical toys, "Boy on Scooter."

(2) That there is no foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for such or similar merchandise.

(3) That the proper basis for appraisement of the articles in question is export value, as defined in section 402 (d) of the Tariff Act of 1930.

(4) That the item described on the invoice as "freight to shipping port" represents cost of freight from the principal market to the port of shipment from the country of exportation.

Accordingly, I hold as a matter of law:

(1)  That the said invoice item described as "freight to shipping port" is not an item that enters into the market value or the price for merchandise in the principal market in the country of exportation packed ready for shipment to the United States.

(2)  That export value, as contemplated by section 402 (d), *supra,* for the merchandise in question is the appraised value, less the item described on the invoice as "freight to shipping port," in the amount of $154.80.

Judgment will be rendered accordingly.

* (Reap. Dec. 8169)