(A. R. D. 20)

UNITED STATES v. PAUL A. STRAUB & CO., INC.

Entry No. 703804.

First Division, Appellate Term

(Decided March 20, 1953)

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Fred Bennett*; *John D. Rode*, associate counsel; for the appellee.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: This is an application for review of the decision of Johnson, J., sitting in reappraisement, reported in 27 Cust. Ct. 442, Reap. Dec. 8047. From a decision in favor of plaintiff below, defendant below appeals.

The issue presented is whether a certain amount, representing the costs of freight and f. o. b. charges from the factory at Selb-Stadt, Germany, which produced the merchandise, to the port of Bremen, Germany, from which it was exported to the United States, is properly a part of the export value of the merchandise.

The issue was submitted for decision upon a stipulation of fact as follows:

(1) That on or about the time of exportation herein such or similar merchandise was freely offered for sale to all purchasers in Selb-Stadt, Germany, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at the F. O. B. Bremen prices appearing upon the invoice, which included an item of "RM 91.80 costs for freight Selb-Stadt f. o. b. Bremen."

(2) That the merchandise was appraised on the basis of export value; concededly the proper basis for appraisement.

(3) That there was no foreign value for such or similar merchandise at or about the time of exportation here involved.

(4) That the only issue is whether the above item invoiced as freight forms part of the statutory export value.

(5) That if the above amount included as inland freight forms no part of the statutory export value of the goods, then the entered value represents the correct export value.

(6) That if the above amount included as inland freight forms part of the statutory value of the goods, then the appraised value represents the correct export value.

(7) That on or about the time of exportation herein, the factory at Selb-Stadt was the principal market in Germany for such or similar merchandise.

(8) That on or about the time of exportation herein, all sales and offers for sale of such or similar merchandise were made at Selb-Stadt, Germany, on an F. O. B. Bremen basis and no sales or offers for sale were made on an at factory basis.

Export value is defined in section 402 (d) of the Tariff Act of 1930 as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The court below, in a very well-documented opinion, held that since Selb-Stadt was concededly the principal market in which merchandise such as that here involved was freely offered for sale for exportation to the United States under the circumstances and conditions set forth in the export value statute, the f. o. b. Bremen price, less the freight and f. o. b. charges from Selb-Stadt, represented the statutory export value of the merchandise.

The value found by the court below, in essence, represents a price for the merchandise *before* shipment to Bremen, i. e., a price for the merchandise when located in the principal market, packed ready for shipment to the United States, but not yet shipped out of Selb-Stadt. Appellant finds difficulty in accepting the value found by the court below because of the fact that, according to the stipulation, there never were any offers or sales made in the principal market for merchandise in that situation, i. e., located at the principal market. Appellant contends that since the *only* price at which the merchandise was ever offered or sold was the f. o. b. Bremen price, that price must be accepted as the export value.

There can be no question but that the effort or purpose of the valuation provisions of the tariff act is to determine the value of merchandise at a certain time, in a certain place, in a certain condition, and under certain circumstances. So far as section 402 (d), governing export value, is concerned, the place factor is "in the principal markets of the country from which exported." (We are not here concerned with the other factors of time, condition, and circumstances.)

By the terms of the stipulation herein, Selb-Stadt was the principal market in Germany for such or similar merchandise. By the terms of the same stipulation, it appears that such or similar merchandise was not offered for sale for delivery in Selb-Stadt, but was only offered for sale for delivery in Bremen. Query: Do these facts in and of themselves bar a finding of export value for such or similar merchandise in Selb-Stadt? We are of the opinion that the answer is no.

The general rule with respect to costs, charges, or expenses in connection with the valuation of merchandise on the basis of export value, as defined in section 402 (d), *supra*, is that any of these which accrue upon merchandise subsequent to the time when it is in the principal market, in condition, packed ready for shipment to the United States, are not part of the export value.

*United States* v. *New England Foil Corp.*, 10 Cust. Ct. 596, Reap. Dec. 5856; *Henry D. Gee Co.* v. *United States*, 24 Cust. Ct. 508, Reap. Dec. 7772; *United States* v. *International Commercial Co., Inc., and Armour & Co.*, 28 Cust. Ct. 629, Reap. Dec. 8112.

It is, however, contended by the appellant that the charges here involved did not accrue *after* the goods left the principal market, but accrued *in* the principal market before the goods left such market. With this statement we cannot agree. Ordinarily, the charges in question are of such nature that they would not accrue until the merchandise was shipped from the principal market, unless there was some special agreement to the contrary, which does not appear in the record. Certainly, there would be no presumption that such charges would accrue before delivery at the port of exportation, and on the record here made we can come to no other conclusion than that the charges arose after the goods left the principal market.

Appellant's main argument is one by analogy to the situation which obtained in the cases of *United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454; *United States* v. *Traders Paper Co. et al.*, 14 Ct. Cust. Appls. 293, T. D. 41909; and *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159. In each of those cases, it appeared that the merchandise involved was freely offered for sale for home consumption in the country of exportation at a uniform delivered price, regardless of destination in that country. Thus, whether one bought for delivery in the principal markets or in the remotest parts of the country, the price was the same. It was held that no deduction for inland freight from the principal market to the port of exportation could be allowed as there was no difference in the price at which the merchandise was offered delivered in either place.

On the record here made, we do not regard the facts in those cases to be analogous to those herein, nor do we regard the decisions in those cases to be controlling of our action herein. In the first place, it clearly appeared in those cases that the offered price was the same in the principal market as it was at the port of exportation. On the stipulated facts, this is not true here, for it is agreed that the merchandise was not offered for delivery in the principal market.

Second, it would appear that the offers involved in the cited cases were upon an entirely different basis with respect to delivery than the offers here involved. The sellers in the cited cases obviously had

scaled their offered prices so as to eliminate any item of shipping charges; that is to say, the shipping charges had been absorbed, distributed, or incorporated into the price of the merchandise so that no one transaction included a *real* or *actual* shipping charge. In effect, nearby purchasers helped to defray the cost of shipping to those located at more distant points.

Here, far from eliminating any question of shipping charges, it is clear from the stipulated facts that it was stated and understood between purchaser and seller, and contemplated by them that the offered price "included an item of 'RM 91.80 costs for freight Selb-Stadt f. o. b. Bremen'." Thus, the purchaser knew that he was paying the *real* or *actual* shipping charges, which was not true in the cited cases.

Also, it must be remembered that the price at which the goods in question were offered was for goods to be exported to the United States, i. e., it was an export price. It would be most logical and reasonable for sellers to offer, and for purchasers to buy, at a price which would include all charges to and including the port of exportation in such circumstances, rather than to offer the goods ex-factory or at a place other than the port of exportation. One who buys for export is interested in getting the goods out of the country of exportation, and consequently an offered price at a point other than a port of exportation would leave him with an extra shipping problem on his hands.

Third, a study of the decisions in the last-cited cases reveals that the *ratio decidendi* was, in the final analysis, based upon the anomalous result which would ensue if the inland freight were permitted to be deducted. It was found that if, under the particular circumstances of those cases, the inland freight from the place of manufacture to the place of delivery were deducted, there would be at the same time, from a customs valuation standpoint, numerous prices in the country of exportation for identical merchandise, depending upon the distance between the place of manufacture and the place of delivery and the costs of transportation. Moreover, the result would be that the net price to those located farthest from the place of manufacture would be less than those located nearer or even at the place of manufacture. See *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196.

No such situation is involved here, where there was only one factory, located at the principal market, and one place of delivery, Bremen.

Finally, appellant's contention seems to be based largely upon the *form* of the offer, as distinguished from its substance. Presumably, had the offer been at a price ex-factory, plus freight and f. o. b. costs, which is the equivalent of the offer actually made, defendant would

not contend that the freight and f. o. b. costs were part of the export value. In view of the wording of the statute and the decided cases on the subject of inland freight, such a contention, if made, would be quickly disposed of adversely to the defendant.

Since the purchaser was to pay an *item* of real or actual freight and f. o. b. *costs*, which item was *included* in the offer, it appears to be clear that delivery f. o. b. Bremen was not a condition of the offer of the merchandise, but was a matter of convenience of the parties and had no other significance. Under the circumstances of this case, such an offer was the equivalent of an offer at the factory, plus the freight and f. o. b. costs, and this is certainly the *substance and necessary implication* of the offer.

On the basis of the foregoing, we are satisfied that the amount included for freight and f. o. b. costs from the principal market to the port of exportation forms no part of the export value of the merchandise. See also *S. Stern Henry & Co.* v. *United States*, 29 Cust. Ct. 479, Reap. Dec. 8168, a case involving a situation seemingly on all fours with that involved in the present case, and in which the same conclusion was reached.

Upon the entire record we find as facts:

(1) That the merchandise herein consists of china ornaments exported from Germany on or about June 26, 1947.

(2) That at or about the time of exportation such or similar merchandise was not freely offered for sale for home consumption in Germany.

(3) That on or about the time of exportation herein, the factory at Selb-Stadt, Germany, was the principal market in Germany for such or similar merchandise:

(4) That on or about the time of exportation herein such or similar merchandise was freely offered for sale to all purchasers in Selb-Stadt, Germany, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at the f. o. b. Bremen prices appearing upon the invoice, which included an item of "RM 91.80 costs for freight Selb-Stadt f. o. b. Bremen."

(5) That the said freight and f. o. b. costs accrued after the merchandise left the principal market, and did not accrue in the principal market.

(6) That the appraised values were the invoice unit values including the said freight and f. o. b. costs.

(7) That the entered value was the invoice unit values less the freight and f. o. b. costs.

We conclude as matters of law:

(1) That the proper basis for the determination of the values of the instant merchandise is export value, as that value is defined in section 402 (d) of the Tariff Act of 1930.

(2) That the amount included for freight and f. o. b. costs from the principal market to the port of exportation forms no part of the export value of the merchandise.

(3) That such export value is the entered value as to each item.

The decision and judgment of the single judge below are therefore affirmed.